

655 Third Avenue
Suite 1821
New York, NY 10017
Tel. No. 212.679.5000
Fax No. 212.679.5005

1010 Northern Boulevard
Suite 328
Great Neck, NY 11021
Tel. No. 516.248.5550
Fax No. 516.248.6027

June 9, 2017

<u>Via ECF</u>
The Honorable Sandra J. Feuerstein
United States District Judge for the
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

   Re: *Persaud v. Tri-Med Home Care Services, Inc. et al*
     <u>Docket No. 15-cv-4341(SJF) (ARL)</u>

Dear Judge Feuerstein:

  This firm represents the two named-Plaintiffs, Tarangini Aneesa Persaud and Benices Infante, and the two opt-in Plaintiffs, Vanessa Venus and Yobana Guzman, (all four together, where appropriate, as "the Plaintiffs"), in the above-referenced wage and hour matter. We submit this letter, on behalf of all parties, to request that the Court review and approve the parties' settlement of the Plaintiffs' claims brought pursuant to the Fair Labor Standards Act ("FLSA") as fair and reasonable in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).[1] A copy of the settlement agreement between the parties is attached hereto as **Exhibit A**.[2]

---

[1] Jack Glasser, Esq., who is counsel of record for the Defendants, Tri-Med Home Care Services, Inc. and Vinod Sinha, joins in this application.

[2] The parties note that they do not seek approval with respect to the settlement of Plaintiffs' state law wage and hour or Plaintiff Infante's state law retaliation claims, as there is no requirement for them to do so. Those claims, however, are covered by the settlement agreement and included as part of the release that Plaintiffs provided to Defendants.

I.     **PRELIMINARY STATEMENT**

On July 24, 2015, Tarangini Aneesa Persaud and Benices Infante filed a Complaint in this Court, against Defendants Tri-Med Home Care Services, Inc., and their former supervisor, Vinod Sinha, (hereinafter, "Defendants"), on behalf of themselves and all those similarly-situated, for Defendants' alleged failure to pay them overtime and minimum wage pursuant to, *inter alia*, the FLSA. Plaintiffs allege that they worked for Defendants as human resource associates and home health coordinators, scheduling Defendants' home health aides to work with Defendants' clients. To perform their jobs, Plaintiffs allege that they worked more than forty hours each week on a scheduled basis, and then remained on-call during nights and weekends when they were required to receive calls and text messages. For this work, Plaintiffs allege that Defendants failed to pay them any compensation for the hours that they worked in excess of forty each week at the statutorily-applicable overtime rate of pay, and further that Defendants failed to pay them minimum wage for all hours worked. Additionally, Plaintiff Infante individually asserted a claim for retaliation pursuant to, *inter alia*, the FLSA, alleging that Defendants terminated her after she complained about unpaid overtime.

During the course of this matter, the parties engaged in extensive discovery. Specifically, the parties exchanged requests for document production and interrogatories, and each party subsequently provided responses for these requests. On February 29, 2016, the named Plaintiffs moved for conditional certification of an FLSA collective action and notice distribution pursuant to 29 U.S.C. § 216(b). During the pendency of the motion, the parties continued with discovery, including two motions to compel made by the Plaintiffs, the first involving Defendants' production of documents, and the second involving depositions. On November 7, 2016, Magistrate Judge Lindsay granted Plaintiffs' motion to conditionally certify the action as a collective action and authorized the issuance of Plaintiffs' proposed notice to all putative members. Our office, on behalf of Plaintiffs Persaud and Infante, then distributed notices to thirty-six individuals. On January 17, 2017, Plaintiff Yobana Guzman opted-in to the action. On January 19, 2017, Mark Turner opted-in to the action.[3] Lastly, on January 23, 2017, Plaintiff Vanessa Venus opted-in to the action.

---

[3] Thereafter, Plaintiffs learned Mark Turner did not work for Defendants and erroneously opted-in to the action. Our office discovered that Mr. Turner returned signed opt-in forms to our office for multiple cases handled by our firm that did not involve him, including the instant action, as well as *Williams v. Fairfield Family Care, LLC et al.*, 16-cv-3903 (VB) (S.D.N.Y.). The undersigned believes that Mr. Turner obtained the forms from our firm's website, which hosts the opt-in forms for several pending cases. Accordingly, Plaintiffs respectfully request that the Court dismiss Mr. Turner's claim, without prejudice, as Plaintiffs have never successfully contacted Mr. Turner with respect to this case. In *Williams*, on April 28, 2017, over our office's objection, Judge Briccetti dismissed Mr. Turner's claims with prejudice. 16-cv-3903 at Dkt. 36.

Additionally, on January 6, 2017, Defendants deposed both named Plaintiffs, Persaud and Infante. Defendants, on February 28, 2017, also produced discovery requests for both of the opt-in Plaintiffs, Guzman and Venus. However, as discussed below, both opt-in Plaintiffs did not comply with Defendants' requests and failed to provide responses.

In February of 2017, the parties agreed to participate in private mediation before Martin F. Scheinman, Esq., who is highly experienced in mediating employment disputes. The documents produced during discovery, including, but not limited to, pay records, schedules, notes, and pay statements were used to facilitate the mediation by enabling the parties to properly assess the strengths and weaknesses of their respective positions, in terms of alleged liability and potential damages.

On April 21, 2017, the parties participated in that mediation, at which time the parties discussed potential liability, as well as the proper method to calculate potential damages with respect to each Plaintiff. The parties, with the mediator's help, eventually agreed on appropriate methods of calculation, and from that point were able to resolve the Plaintiffs' claims. Based on each Plaintiff's damages, the parties agreed to settle the matter for a total sum of $50,000.00, with each Plaintiff to receive the following amounts:

| | |
|---|---|
| Tarangini Aneesa Persaud: | $21,159.56 |
| Benices Infante: | $7,391.35 |
| Vanessa Venus: | $543.00 |
| Yobana Guzman: | $543.00 |

From the total settlement, Plaintiffs' counsel will receive one-third of that amount, comprising a total of $16,666.67, in attorneys' fees and $3,696.42 as a reimbursement for litigation expenses. Each Plaintiff, and Counsel, will receive the settlement amount no later than seven days from the date on which the Court approves this settlement. As described below, the parties submit that the agreement represents a fair and reasonable resolution of Plaintiffs' FLSA claims asserted in the matter. Thus, the parties respectfully request that the Court approve the agreement.

## II.     THE AGREEMENT IS FAIR AND REASONABLE

FLSA claims may be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be

3

approved." *Id*. (citation omitted).  When analyzing a Rule 41 FLSA settlement, "'[t]he ultimate question' for the court considering whether to approve the proposed settlement agreement is whether it 'reflects a fair and reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Sagardia v. AD Delivery & Warehousing, Inc.*, 2016 WL 4005777, at *1 (E.D.N.Y. July 22, 2016) (quoting *Wolinskv v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

Additionally, "[t]he force of this presumption is increased when a settlement is reached with the assistance of an experienced mediator." *Saldana v. Middletown Car-G-Cam Uni Corp.*, 2015 WL 12591678, at *1 (S.D.N.Y. Sept. 23, 2015) (citing *Sukhnandan v. Royal Health Care of Long Island LLC*, 2013 WL 4734818, at *2 (S.D.N.Y. Sept. 3, 2012)); *accord In re Penthouse Executive Club Comp. Litig.*, 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013) ("A settlement . . . reached with the help of third-party neutrals enjoys a presumption that the settlement achieved meets the requirements of due process."); *Toure v. Amerigroup Corp.*, 2012 WL 1432302, at *1 (E.D.N.Y. Apr. 20, 2012) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive.").

In evaluating a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky*, 900 F. Supp. 2d at 335.  The *Wolinsky* factors consider: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.  *Id*.

### A. Plaintiffs' Allegations

In this case, Plaintiffs claim that they worked for Defendants as non-managerial employees in Defendants' Human Resources Department and as home health aide coordinators, scheduling home health aides to ensure their arrival at the homes of Defendants' clients. Plaintiffs allege that throughout their employment, they routinely worked more than forty hours each week, and were paid a flat weekly salary in exchange for their work.  Plaintiffs further allege that Defendants required Plaintiffs to work "on call" either two or three additional days per week, where Plaintiffs were required to immediately respond to any scheduling issues that might arise.  The employment durations worked by each Plaintiff are as follows: Plaintiff Persaud, ten weeks; Plaintiff Infante, eight weeks; Plaintiff Venus, five weeks; and Plaintiff Guzman, four weeks.

Plaintiff Persaud's alleged hours worked were supported with timesheets that Defendants maintained and supplied.  From these records, the parties were able to accurately determine Plaintiff Persaud's weekly schedule, and calculate the average weekly hours worked by Plaintiff Persaud.  Specifically, Defendants' records showed Plaintiff Persaud worked between forty-five

and fifty-seven scheduled hours per week. Defendants also produced records for Plaintiff Infante, showing that she worked only two of her eight weeks as a full-time home health coordinator. According to Plaintiff Infante's deposition testimony, she worked part-time between thirty and thirty-six hours for the previous six weeks of her employment. Defendants' records show that during her two full-time weeks as a home health coordinator, Plaintiff Infante worked similar hours as Plaintiff Persaud, approximately forty-five to fifty-seven scheduled hours per week.

Additionally, Plaintiff Venus alleged that she worked 42.5 hours per week, and Plaintiff Guzman alleged that she worked 48.5 hours per week. Defendants produced records to dispute the opt-in Plaintiffs' hours, arguing that neither Plaintiff Venus nor Plaintiff Guzman worked overtime hours in their short employment periods with Defendants. Complicating both opt-in Plaintiff's allegations was their failure to respond to the Defendants' discovery requests, despite our office's attempts to comply with Defendants' requests prior to mediation. As a result, Defendants had the option of making a motion to dismiss the opt-in Plaintiffs' claims (after first making the appropriate compel motions), but the parties decided to proceed with mediation in an attempt to avoid further cost.

After discussing the amount of overtime hours worked by each Plaintiff per week, the parties then discussed the appropriate method for calculating each Plaintiff's rate of pay for damage purposes. The parties ultimately agreed that Plaintiffs' overtime rate would be calculated at a time and one-half rate using Plaintiffs' method of calculation for all weeks worked during the applicable time period. Accordingly, after dividing Plaintiff Persaud's weekly salary of $730.00 by forty hours, the parties then multiplied this value by one and one-half to reach her overtime rate of $27.38. After determining Plaintiff Persaud's overtime rate, the parties calculated her damages based on her overtime hours worked. Ultimately, the parties compromised at sixty-seven hours, representing fifty-seven scheduled hours and ten "on call" hours.

For Plaintiff Infante, Defendants compensated her at a rate of $250.00 per week when she was attending training sessions. Thereafter, beginning on April 27, 2015, Defendants increased Plaintiff Infante's salary to a weekly salary of $500.00, after she completed her training sessions and began working full-time. Plaintiff worked in this capacity for only two weeks. Accordingly, after dividing Plaintiff Infante's full-time salary by forty hours, the parties multiplied this value by one and one-half to reach her overtime rate of $18.75. After determining Plaintiff Infante's overtime rate, the parties calculated her damages based upon the same hours alleged by Plaintiff Persaud, fifty-seven office hours with ten "on-call" hours, totaling sixty-seven hours.

For the opt-in Plaintiffs, Defendants initially were not prepared to offer any money to settle their claims, on account of their belief that the opt-in Plaintiffs did not work over forty hours in their respective employment periods. Defendants also argued that the opt-in Plaintiffs'

5

failure to comply with discovery requests weakened their claims, which should potentially be dismissed with prejudice. Ultimately, Defendants agreed to resolve both opt-in Plaintiffs claims for $543 each.

      **B.     Range of Recovery, Potential Burdens and Risks of Continued Litigation, and Evidence of an Arm's Length Negotiation Devoid of Collusion**

Based on the hours, wages, and damage calculations explained above, Plaintiffs will receive substantial recovery of their FLSA actual and liquidated damages that is arguably close to the amount that they would receive on their best day should those claims proceed to trial. In Plaintiffs' Complaint, Plaintiffs Persaud and Infante alleged to work between fifty-seven and eighty-seven hours. As a result of information obtained through discovery, and based upon Plaintiffs' deposition testimony and Defendants' records, Plaintiffs' hours worked in the office were between forty-five and fifty-seven. Moreover, records did not exist to support Plaintiffs' "on-call" hours, making it difficult for Plaintiffs to meet their burden of proving that their "on call" hours were compensable in addition to their scheduled office hours.

Additionally, each opt-in plaintiff worked for Defendants for a short time, and assuming their claims were not dismissed for discovery failures, each had very limited prospects for recovery. Specifically, opt-in plaintiff Venus worked for four weeks and opt-in plaintiff Guzman for five weeks, and neither was responsible for the "on-call" hours over the weekend, unlike the named Plaintiffs. Based on Plaintiffs' allegations, and the evidence provided through discovery and analyzed by both parties at and prior to the mediation, the varying ranges of recovery are as follows:

The Plaintiffs' recovery best day recovery based upon their allegations:

| Plaintiff | Weeks Worked | Weekly Pay | Maximum Actual Plus Liquidated Recovery Based on 87 Hours | Settlement Amount Received After Fees and Costs | Recovery Percentage |
|---|---|---|---|---|---|
| Persaud | 10 | $730.00 | $25,732.50 | $21,159.56 | 82% |
| Infante | 2 | $500.00 | $4,785.50 | $7,391.35 | 154% |

The Plaintiffs' recovery based upon the records:

| Plaintiff | Weeks Worked | Weekly Pay | Maximum Actual Plus Liquidated Recovery Based on 57 Scheduled Hours | Settlement Amount Received After Fees and Costs | Recovery Percentage |
|---|---|---|---|---|---|
| Persaud | 10 | $730.00 | $9,307.50 | $21,159.56 | 227% |
| Infante | 2 | $500.00 | $2,535.00 | $7,391.35 | 292% |

The Plaintiffs' recovery based upon the compromise at mediation:

| Plaintiff | Weeks Worked | Weekly Pay | Maximum Actual Plus Liquidated Recovery Based on 57 Scheduled Hours and 10 "On Call" Hours | Settlement Amount Received After Fees and Costs | Recovery Percentage |
|---|---|---|---|---|---|
| Persaud | 10 | $730.00 | $14,782.50 | $21,159.56 | 143% |
| Infante | 2 | $500.00 | $3,285.00 | $7,391.35 | 225% |

As previously discussed, Defendants placed only nominal value on the opt-in Plaintiffs' claims. Therefore, based upon a sixty-seven hour workweek compromise, Plaintiffs' combined FLSA damages totaled approximately $20,000.00. Additionally, Plaintiffs' counsels' fees at this juncture was approximately $40,000.00. Thus, the parties ultimately reached a compromise of $50,000.00, which is well-above Plaintiffs' likely recovery based upon the records, and results in each named Plaintiff recovering a higher amount than their actual plus liquidated FLSA damages. Each opt-in Plaintiff will also likely receive and amount that is more than they would have received if litigation continued.

With respect to Plaintiff Infante's retaliation claim, Plaintiff Infante mitigated her damages by finding new employment shortly after her employment with Defendants ended. Additionally, Defendants adamantly denied the reason for termination was motivated by Plaintiff Infante's claims for unpaid wages, and therefore she faced the prospects of lengthy and costly litigation to prove her claim. In light of her recovery as exhibited above, Plaintiff Infante accepted the amount offered as a fair and reasonable compromise for resolution of all of her claims against Defendants.

Importantly, the compromise reached of sixty-seven hours unquestionably represents a fair and reasonable outcome, especially considering the alternative of lengthy and costly litigation for an outcome that may be lower than the settlement amount. The tables above amply explain the inarguable risk of continued litigation resulting in less recovery for each Plaintiff. Indeed, Defendants' records showed scheduled hours in some workweeks fewer than fifty-seven for both Plaintiffs Persaud and Infante, and proving compensable work for "on call" hours requires meeting a heavy burden. Undoubtedly, the burdens and costs of the continued litigation in light of the accepted settlement amount clearly favored avoidance.

Moreover, further providing support of an arm's length negotiation, the settlement agreement does not contain any terms that would militate against the Court approving it. For instance, each Plaintiff's release in paragraph 3 of their Settlement Agreement is limited to any wage-and-hour related claims that Plaintiffs have or may have against Defendants, including all claims asserted in the Complaint, and does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria, LLC*, 2015 WL 1455689, at *6-7 (S.D.N.Y. March 30, 2015). To the contrary, this release is narrowly tailored to release only claims relevant to the instant action.

Lastly, the Court has witnessed the discovery disputes and adversarial (albeit, always professional) nature between the parties litigating this matter. This exemplifies an arm's length process resulting in a resolution that is devoid of any fraud or collusion. This factor, in addition to the four previously explained *Wolinsky* factors, weighs heavily in favor of approval of this settlement as fair and reasonable.

    **C.**    **Attorneys' Fees and Costs are also Reasonable**

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Velazquez v. P.J.C.M. Rest. Corp.*, 2016 WL 4987156 (S.D.N.Y. Sept. 15, 2016) (citing *Mahalick v. PQ New York Inc.*, 2015 WL 3400918, at *2 (S.D.N.Y. Apr. 30, 2015)).[4] Attorneys'

---

[4] Judge Pittman, however, recently found as follows: "I do not address the fee arrangement between plaintiff and their counsel because I do not believe I am required to do so under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), cert. denied, 136 S. Ct. 824 (2016). As described in *Cheeks*, the purpose of the FLSA is to regulate the relationship between an employee and her employer and to protect the employee from over-reaching by the employer. 796 F.3d at 206. I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counsel or to alter the freedom of contract between a client and his attorney." *Barbecho v. M.A. Angeliades, Inc.*, 2016 WL 3524066, at *2 n.4 (S.D.N.Y. June 21, 2016).

fees in FLSA settlements are examined, when examined, "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, Plaintiffs' counsel requests that the Court approve fees of one-third of the total settlement is "consistent with the trend in this Circuit." *Tiro v. Public House Investments, LLC*, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); *Kochilas v. Nat'l Merchant Servs., Inc.*, 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases). Courts in this Circuit routinely approve attorney's fees awards at a rate of one-third of the total settlement. *See McDaniel v. City of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (noting that the percentage of recovery method is "the trend in this Circuit."); *see also Cregg v. Firstservice Residential N.Y., Inc.,* Docket No. 15-cv-3876-LB, D.E. 14, at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); *Najera v. Royal Bedding Co., LLC*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("[O]ne-third contingency fee is a commonly accepted fee in this Circuit."); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery). Thus, a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of a settlement or award. *See Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Here, Plaintiffs' counsel's requested fee of $16,666.67, or one-third of the settlement here, is thus entirely reasonable.

Moreover, the reasonableness of these fees is further solidified by "[a]pplying the lodestar method as a cross check" to ensure that counsel's fee award is not excessive in relation to the amount of work actually performed. *Guaman v. Ajna-Bar NYC*, 2013 WL 445896, at *8 (S.D.N.Y. Feb. 5, 2013) (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Goldberger*, 209 F.3d. at 50; *Aboud v. Charles Schwab & Co., Inc.*, 2014 WL 5794655, at *5 (S.D.N.Y. Nov. 12, 2014); *Fujiwara v. Shushi Yasuma Ltd.*, 58 F. Supp. 3d 424, 435 (S.D.N.Y. 2014); *In re Nassau County Strip Search Cases*, 12 F. Supp 3d 485, 491 (E.D.N.Y. 2014); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 991 F. Supp. 2d 437 (E.D.N.Y. 2014). When considering the lodestar cross-check, "[c]ourts regularly award lodestar multipliers from 2 to 6 times the lodestar." *Capsolas v. Pasta Resources Inc.*, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012); *see also*, *e.g.*, *Toure*, 2012 WL 3240461, at *5 (awarding multiplier of 3.53); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184-186 (W.D.N.Y. 2011) (awarding multiplier of 5.3); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at

\*8-10 (E.D.N.Y. Jan. 20, 2010) (awarding multiplier of 3.3); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2001) (calling a multiplier of 4.65 "modest," "fair and reasonable").

In order to calculate the lodestar cross check, the Firm multiplied the attorney and paralegal hours spent on the case by the individuals' reasonable hourly rates. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). Here, if Plaintiffs' counsel were seeking fees pursuant to the lodestar, Michael J. Borrelli, the managing partner, would seek $400 per hour, Alexander T. Coleman, the Firm's litigating partner, would seek $350 per hour for his time, the Firm's senior associate, Jeffrey R. Maguire, who possesses eight years of experience, would seek $275 per hour, and the Firm would seek reimbursement for its junior associate at a rate of $200 per hour, and its paralegals at the rate of $100 per hour. Courts within this Circuit regularly approve these rates. *See Aguilar v. Trolio Landscaping, Inc.*, Docket No.: 16-cv-02230 (CS), D.E. 32 (S.D.N.Y. Feb. 16, 2017) (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman, $200.00 per hour for one of the firm's junior attorneys, and $100.00 per hour for the Firm's paralegals); *Santos v. Yellowstone Properties, Inc.*, 2016 WL 2757427, at \*5 (S.D.N.Y. May 10, 2016) (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman after becoming a partner and $325.00 per hour for him prior to becoming a partner, rates ranging from $200.00 to $300.00 for the Firm's associates, and between $75 per hour and $90 per hour for the Firm's paralegals); *Calderon v. Dynamic Corp. Holdings, Inc.*, No 14-cv-3093 (ARL) (E.D.N.Y. Apr. 8, 2016) (same); *Rosario v. Valentine Ave. Discount Store. Co.*, No. 10-cv-5255 (ERK)(LB) (E.D.N.Y. Mar. 3, 2016) (same); *Castillo v. RV Transport, Inc.*, No. 15-cv-527 (LGS)(JCF) (S.D.N.Y. Dec. 21, 2015) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman prior to him becoming a partner, $250.00 per hour for one of the Firm's senior associates, and $100.00 per hour for the Firm's paralegals); *Cregg v. FirstService Residential New York, Inc.*, No. 15-cv-3876 (LB) (E.D.N.Y. Dec. 9, 2015) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman, $250.00 per hour for Mr. Maguire, and $75 per hour for the Firm's paralegals); *Patino v. Brady Parking, Inc.*, 2015 WL 2069743, at \*2 (S.D.N.Y. Apr. 30, 2015) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman, $250.00 per hour for one of the Firm's associates, and $75 per hour for the Firm's paralegals).

The Firm's attorney hours spent on this matter total 261.8. Accordingly, the Firm's lodestar with respect to the time accounted for in this settlement is $51,700.50. This produces a lodestar multiplier of approximately 0.32, which is much less than courts within this Circuit have found to be fair and reasonable.

Plaintiffs' counsel's billing records are annexed hereto as **<u>Exhibit B</u>**.

Lastly, with respect to expenses, the Firm is seeking reimbursement for $3,696.42 in out-of-pocket expenses, comprised of: the filing fee, mediation fees, and postage.

Plaintiffs' counsel's expense statement is annexed hereto as **Exhibit C**.[5]

### III.  CONCLUSION

In light of the foregoing, the parties respectfully request that the Court approve their settlement and dismiss this matter, with prejudice, except to retain jurisdiction to enforce the terms of the parties' settlement agreement in the event of non-payment.

Dated: New York, New York
         June 9, 2017

                                                            Respectfully submitted,

                                                            Borrelli & Associates, P.L.L.C.
                                                            *Attorneys for Plaintiffs*
                                                            655 Third Avenue, Suite 1821
                                                            New York, New York 10017

                                                            By: _____
                                                                 Jeffrey R. Maguire, Esq.

cc:  Jack Glasser, Esq. (via *ECF*)

---

[5] The attached statement of costs shows a slightly higher amount reflecting minimal costs incurred following the distribution of the settlement agreements for execution by each Plaintiff, but Plaintiffs' counsel seeks the lesser amount represented in the settlement agreement, and in this motion, of $3,696.42.

11